## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CHRISTINA BAUER**,
*individually and on behalf of a class of
similarly situated persons,*

     *Plaintiff,*

     v.

**WALMART, INC.,** and **WALMART
APOLLO, LLC.,**

     *Defendants.*

Case No.:

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

**COMES NOW**, Plaintiff, **Christina Bauer**, on behalf of herself and a class of similarly situated individuals, by and through undersigned counsel, and complains of Defendants, Walmart, Inc., and Walmart Apollo, LLC, and states as follows:

## DESCRIPTION OF THE CASE

1. Plaintiff brings this action on behalf of herself and on behalf of a Class of similarly situated consumers who purchased any of Bettergoods® "Plant-Based" Milks, including:

    a. Bettergoods® "Plant-Based" Original Almondmilk;

    b. Bettergoods® "Plant-Based" Unsweetened Original Almondmilk;

    c. Bettergoods® "Plant-Based" Vanilla Almondmilk;

    d. Bettergoods® "Plant-Based" Unsweetened Vanilla Almondmilk;

    e.  Bettergoods® "Plant-Based" Chocolate Almondmilk;

    f.  Bettergoods® "Plant-Based" Oatmilk;

    g.  Bettergoods® "Plant-Based" Extra Creamy Oatmilk; or,

    h.  Bettergoods® Original "Plant-Based" Soymilk (each a "**Product**," jointly, the "**Products**").

2.    Defendants prominently and conspicuously marketed and sold the Products as "Plant-Based" by displaying the phrase "Plant-Based" in large font on each of the Products' front labels, as well as on the side of the packaging for each Product.

3.    Defendants' prominent and conspicuous labeling deliberately led reasonable consumers, including Plaintiff, to incorrectly believe that the Products are composed of only ingredients that come from plants.

4.    Despite Defendants' labeling, the Products contain several ingredients that do not come from plants, including Calcium Carbonate, Dipotassium Phosphate, and Vitamin A Palmitate.

5.    Plaintiff and the Class purchased Defendants' deceptively-labeled Products on the reasonable, but mistaken belief that the Products only contained ingredients that come from plants.

6.    Defendants' false representations amount to a breach of warranty, which violates Florida's Uniform Commercial Code, § 672.313, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act, § 501.201, Fla. Stat., *et. seq.* ("FDUTPA"),

Florida's prohibition against false, misleading, and deceptive advertising and sales, § 817.41, Fla. Stat., and are otherwise grounds for restitution based on quasi-contract/unjust enrichment.

7. Plaintiff seeks to remedy Defendants' deceptive labeling, marketing, and selling of the Products.

8. Plaintiff seeks damages, injunctive relief, and a jury trial.

## JURISDICTION AND VENUE

9. This Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Defendants are a Delaware corporation and a limited liability company with their principal places of business in Bentonville, Arkansas, and Plaintiff is domiciled in Florida. The amount in controversy exceeds $5,000,000 for Plaintiff and the putative Class, exclusive of interest and costs, reaped by Defendants from their transactions with Plaintiff and the putative Class, as a direct and proximate result of the wrongful conduct alleged herein and by the injunctive and equitable relief sought.

10. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this cause of action occurred within Hillsborough County, Florida, which is in this District and Division.

## PARTIES

11. Plaintiff, **Christina Bauer** ("Ms. Bauer") is an adult individual and Florida citizen, permanently domiciled in Hillsborough County, Florida.

12.    Ms. Bauer permanently resides at a home with her husband in Tampa, Florida.

13.    Defendant, **Walmart, Inc.**, ("Walmart") is an Arkansas corporation with a principal place of business located at 1 Customer Drive, Bentonville, Arkansas 72716.

14.    Walmart's Florida registered agent is CT Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324.

15.    Defendant, **Walmart Apollo, LLC** ("Walmart Apollo") is an Arkansas Limited Liability Company. Walmart Apollo's principal place of business is also located at 1 Customer Dr., Bentonville, AR 72716.

16.    Walmart Apollo owns the intellectual property associated with the Product, including the Bettergoods® brand. The division of responsibility for marketing and labeling between Walmart and Walmart Apollo, or other related entities under the Walmart corporate umbrella is currently unknown to Plaintiff, but is discoverable through litigation.

## FACTUAL ALLEGATIONS

### Growth of the Plant-Based Industry

17.    Over the past decade, Plant-Based food alternatives have shifted from a niche market to the mainstream food system. In fact, about 60% of U.S households

purchased plant-based foods in 2023 -- indicating that these products are now widely integrated into consumer diets.[1]

18.    Among Plant-Based categories, Plant-Based milk is, by far, the most widely adopted. Indeed, nearly half of U.S. households purchased Plant-Based milk at least once in 2023, and nearly 80% of those households were repeat purchasers.[2]

19.    Moreover, Plant-Based milk accounts for around 16% of all retail milk sales in the United States.[3]

20.    Retailers have taken notice of this consumer trend and, over the last decade, have increasingly sold Plant-Based products by marketing the products as healthy lifestyle alternatives.

21.    Defendants are large grocery retailers acutely aware of the market demand for Plant-Based products and have meticulously marketed Plant-Based products to satisfy this demand.

22.    To satisfy the growing demand for Plant-Based products, including Plant-Based milk, Defendants sell the Products online and at physical locations throughout the United States, including in Tampa, Florida.

---

[1] https://gfi.org/wp-content/uploads/2024/05/2023-State-of-the-industry-report_Plant-based.pdf, at 35 (last accessed March 19, 2025).

[2] *Id.* at 39.

[3] https://www.businesswire.com/news/home/20221216005315/en/Plant-based-Milk-Global-Market-Report-2022-Rising-Health-Consciousness-Fueling-Growth---ResearchAndMarkets.com?

23.   Ms. Bauer has regularly purchased the Bettergoods® "Plant-Based" Unsweetened Vanilla Almondmilk Product over the past calendar year.

24.   As one example, on or about October 3, 2025, Ms. Bauer purchased the Bettergoods® "Plant-Based" Unsweetened Vanilla Almondmilk Product using Walmart's mobile app. The order was placed for curbside pickup from Walmart's physical location at 4302 W. Gandy Blvd. Tampa, Florida 33611.

25.   The Product's packaging was displayed to Ms. Bauer through the phone app, which showed the below images:

 

        

26.   Thus, the purchased Product's front and side packaging prominently and conspicuously displayed the phrase "Plant-Based," thereby representing to would-be purchasers that the Product only contained ingredients derived from plants.

27.    The purchased Product's actual packaging mirrored that presented to Ms. Bauer on her phone application:



28.    The purchased Product's packaging was consistent with the Products' normal packaging and with the Products purchased by the putative class.

29.    Plaintiff and the putative Class relied upon Defendants' representations that the Products were "Plant-Based" when the decision to purchase the Products was made.

30.    The Products' back labels contain the Products' ingredients, as seen for the purchased Product below:

INGREDIENTS: ALMONDMILK (FILTERED WATER, ALMONDS), LESS THAN 2% OF: CALCIUM CARBONATE, NATURAL FLAVOR, SEA SALT, DIPOTASSIUM PHOSPHATE, GELLAN GUM, SUNFLOWER LECITHIN, XANTHAN GUM, VITAMIN A PALMITATE, VITAMIN $D_2$, D-ALPHA-TOCOPHEROL (VITAMIN E).
CONTAINS ALMONDS.

31.     The Products' ingredients labels make clear that the Products contain multiple ingredients that do not come from plants, including: calcium carbonate, dipotassium phosphate, and vitamin A palmitate.

32.     Calcium carbonate is a common food additive. It serves as a supplement, leavening agent, stabilizer, and coloring agent. As its name suggests, it also provides a source of calcium.

33.     Calcium carbonate is an *inorganic chemical compound*.

34.     Calcium carbonate is found in nature as limestone, chalk, marble, dolomite, and in creatures like seashells, eggshells, and snails.

35.     While there are numerous methods of producing calcium carbonate for use in food products, the most common involves limestone or quarried marble, and then introducing water, temperature, and pressure.

36.     Calcium carbonate is thus not derived solely from plants.

37.     Likewise, dipotassium phosphate is a compound produced by reacting a source of potassium (usually potassium hydroxide) with phosphoric acid. It is synthetic, and most commonly produced for foods from mining potash.

38.     Dipotassium phosphate is thus not derived solely from plants.

39.     Vitamin A palmitate is a synthetic form of vitamin A.

40.     Vitamin A palmitate is a fat-soluble vitamin composed of retinol (the alcohol form of vitamin A) and palmitic acid. It naturally occurs in liver, fish, and dairy products – not plants.

41.     Vitamin A palmitate is thus not derived solely from plants.

42.     Each of the Products contained non-plant-derived ingredients.

43.     In addition to the three ingredients above, a number of the Products contain tricalcium phosphate as an ingredient.

44.     Tricalcium phosphate is found in nature as a mineral. It can be sourced from animal bone ash or rock deposits, or synthesized.

45.     Tricalcium phosphate is not derived solely from plants.

46.     A number of the Products also contained sea salt, which, as the name suggests, is derived from ocean water, not plants.

47.     Because each of the Products contain ingredients not derived from plants, Defendants' front and side-label representations that the Products are "Plant-Based" are false.

48.     Defendants knew that one of – if not the – most important, representation to consumers was the representation that the Products were "Plant-Based."

49.     Defendants prominently made the "Plant-Based" representation knowing the representation was false and/or misleading to reasonable consumers.

50.     By deceiving consumers about the Products' nature, quality, or ingredients, Defendants steal from competing market shares, commanding a price premium, thereby increasing their own profits.

51.     A reasonable consumer is not an expert in the processes used to create non-dairy milk.

52.    A reasonable consumer would not expect that non-plant-derived stabilizers are used in the Product, when the front and side labels prominently feature the representation, "Plant-Based."

53.    Defendants intended for consumers to rely on their representations, and Plaintiff and the class did, in fact, rely on Defendants' representations.

54.    As a consequence of Defendants' false and misleading labeling, Defendants sold the Products to thousands of consumers throughout the United States, profiting handsomely from these transactions.

55.    Defendants' "Plant-Based" representation is not disclaimed or modified on the Products' labels. Instead, Defendants add images of fruit and almonds, and other traditionally "healthy," plant-based foods to reinforce their marketing of the Products as Plant-Based.

56.    Plaintiff purchased the Products to her detriment, as did members of the putative classes.

57.    Plaintiff purchased the Products for personal and family use, including for her own consumption.

58.    Plaintiff's purchase price is representative of the price paid by similarly situated consumers who also purchased the Products.

59.    The Products' representations to Plaintiff were the same as the Products' representations to members of the putative classes.

60.     Acting reasonably under the circumstances, Plaintiff relied on Defendants' representations for the truth of the matter stated.

61.     It is possible that Plaintiff would purchase the Products in the future if the representations were truthful, as Plaintiff continues to buy similar products within the marketplace.

62.     Defendants intentionally included the prominent "Plant-Based" representation on the Products' front label to induce purchases and increase sales.

63.     Plaintiff and class members have suffered injury in fact and lost money because of Defendants' wrongful conduct.

64.     Defendants' conduct was willful, intentional, and exhibited a reckless disregard for Plaintiff's health and well-being.

65.     As the intended, direct, and proximate result of Defendants' false and deceptive representation, Defendants have been unjustly enriched through the continued sale of falsely labeled Products to the detriment of Plaintiff and class members.

66.     As a direct and proximate result of Defendants' deception, Defendants unfairly obtained other benefits, including the higher value associated with a "Plant-Based" brand, including higher stock value, redirecting sales away from competitors, and increased Product sales.

## CLASS ACTION ALLEGATIONS

67.    Plaintiff brings this matter as a Class Action, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), on behalf of herself and the following Classes:

**The "Florida Class":**

**All natural persons within the State of Florida who purchased any of the Products within the last four (4) years preceding the filing of this Complaint.**

**The "National Class" (together with the Florida Class, the "Classes"):**

**All natural persons within the United States of America who purchased any of the Products within the last four (4) years preceding the filing of this Complaint.**

68.    Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

69.    Specifically excluded from the putative classes are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

70.    **Numerosity. Fed R. Civ. P. 23(a)(1).** Class Members are so numerous that their individual joinder is impracticable. Upon information and belief, each Class includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiff at this time, but may be determined through

discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants, their agents, or other means.

71.    **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

a. Whether Defendants' labeling of the Products as "Plant-Based" was a material misrepresentation on the Products' labels;

b. Whether the omissions and representations on the Products' labels and the Products' other marketing materials, or any single omission or representation, is false, misleading, or deceptive;

c. Whether Defendants' conduct in advertising and selling the Products amounted to unlawful, unfair, or deceptive business practices;

d. Whether Defendants breached an express or implied warranty created through the labeling and marketing of its Products;

e. Whether Plaintiff and the Class Members are entitled to equitable or injunctive relief;

f. Whether Plaintiff and the Class Members have sustained damage as a result of Defendants' unlawful conduct;

g. The proper measure of damages sustained by Plaintiff and the Class Members; and

h. Whether Defendants were unjustly enriched by their unlawful practices.

72. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the Class members' claims in that Plaintiff and the Class Members sustained damages as a result of Defendants' uniform wrongful conduct, as alleged above.

73. **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Classes and will fairly and properly protect the interests of the Classes. Plaintiff has retained experienced counsel who have several complex consumer class action cases, including those involving unfair and deceptive trade practices. Plaintiff's counsel is competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of Class members.

74. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described throughout this Complaint stems from common and uniform practices, resulting in systematic violations of state and federal law. Class members do not have an interest in pursuing individual claims against the Defendants as the amount of each individual claim is small compared to

the expense and burden of individual prosecution. Class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a Class Action will not likely present any difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims to a single forum.

75. Absent Class Action, Class members will continue to have their rights violated and will continue to suffer monetary damage, as well as other damages.

76. Defendants' actions are generally applicable to the entire Classes, and accordingly, the relief sought is appropriate with respect to the entire Classes.

77. All conditions precedent to this action have occurred, been satisfied, or been waived.

**COUNT I**
**VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT FLA. STAT. § 501.201**

*Florida Class Only*

78. Ms. Bauer incorporates, by reference, paragraphs 1 – 78.

79. The Products are a tangible good with value.

80. Defendants advertised, solicited, provided, offered, or distributed the Products in Florida.

81. Defendants therefore engaged in "trade or commerce" within the state of Florida, as defined in § 501.203(8), Fla. Stat.

82. Fla. Stat. § 501.204(1) prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

83. Defendants have mislabeled and misbranded the Products in violation of various state and federal statutes and regulations, including 21 U.S.C. § 343 and § 500.11, Fla. Stat.

84. Such mislabeling and misbranding constitute unfair and deceptive conduct in violation of § 501.204(1), Fla. Stat.

85. Defendants' violations of Fla. Stat. § 501.204(1) were willful and knowing.

86. As a direct and proximate result of Defendants' unfair and deceptive acts, Plaintiff and the Class were injured, suffered damages, and are entitled to actual damages, attorneys' fees, and costs.

87. The injuries suffered by Plaintiff and the Class include, but are not limited to, paying for Defendants' Product, paying a premium price for Defendants' falsely advertised Product, and the unlawful profits Defendants earned from the sales of the falsely advertised Products.

88. Accordingly, on behalf of herself and all others similarly situated, Plaintiff seeks restitution from Defendants and an Order of this Court proportionally disgorging all profits, benefits, compensation, consideration, and other monies obtained by Defendants from its wrongful conduct.

## COUNT II
## VIOLATION OF § 817.41, FLA. STAT.

### *Florida Class Only*

89.     Plaintiff adopts and incorporates Paragraphs 1 – 78 as if fully stated herein.

90.     Defendants engaged in false advertising when they represented that the Products were "Plant-Based," and thus contained only ingredients derived from plants.

91.     Defendants intended for consumers like Plaintiff and the Class to rely on this false advertising when looking at beverages to purchase.

92.     Ms. Bauer and the Class did rely on Defendants' representations when purchasing the Products.

93.     As a direct and proximate result of Defendants' false advertising, Plaintiff and the Class were injured and suffered damages and are entitled to actual damages, attorneys' fees, and costs.

94.     Plaintiff and the Class relied on Defendants' false advertising to their detriment, purchasing the Products and paying a price premium due to Defendants' misrepresentations.

95.     The injuries suffered by Plaintiff and the Class include, but are not limited to, paying for Defendants' Products, paying a premium price for Defendants' falsely advertised Products, and the unlawful profits Defendants earned from the sales of these falsely advertised Products.

## COUNT III
## BREACH OF IMPLIED WARRANTY

### *Both Classes*

96. Ms. Bauer incorporates, by reference, paragraphs 1 – 78.

97. Defendants are merchants with respect to grocery products, including "Plant-Based" products marketed for human consumption.

98. In entering into a contract with Ms. Bauer for Defendants' sale of the Product, Defendants, as merchants with respect to the Products, impliedly warranted to Ms. Bauer that the Products were made solely of ingredients derived from plants.

99. Plant-Based products of the kind sold by Defendants are ordinarily purchased by conscientious consumers seeking healthier food and drink alternatives.

100. Defendants' Products failed to satisfy Plaintiff's standard and desire to seek out healthier food and drink alternatives.

101. Defendants' Products were therefore not fit for their marketed purpose.

102. Thus, Defendants breached its implied warranty of merchantability, as it sold Products not fit for its marketed purpose.

103. All conditions precedent to this action have been satisfied.

104. As a consequence of Defendants' breach of its implied warranty of merchantability, Ms. Bauer has suffered damages, as set forth above.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

### *Both Classes*

105.   Ms. Bauer incorporates, by reference, paragraphs 1 – 78.

106.   Defendants made express warranties to Plaintiff, and members of the putative Classes, that the Products they purchased were "Plant-Based," and thus contained only ingredients derived from plants.

107.   The express warranties made to Plaintiff and members of the putative Classes appear on every Products' front and side labels.

108.   The express warranty regarding the Products' nature marketed by Defendants specifically relates to the good being purchased and became the basis of the bargain.

109.   Plaintiff and the putative Classes purchased the Products under the belief that the Products conformed to the express warranties made on the Products' labels.

110.   Defendants breached the express warranties made to Plaintiff and members of the putative Classes by failing to supply goods that conformed to the warranties it made, specifically by providing Products containing synthetic ingredients like Calcium Carbonate, Dipotassium Phosphate, and Vitamin A Palmitate.

111.   Plaintiff and the members of the putative Classes paid money for the Products. However, Plaintiff and the members of the Classes did not obtain the full value of the advertised Products.

112. If Plaintiff and other Class members had known the Products' true nature, they would not have purchased them, or paid less for them.

113. Accordingly, Plaintiff and the Class members have suffered an injury in fact and lost money or property as a result of Defendants' wrongful conduct.

114. Plaintiff and the putative Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

115. All conditions precedent to this action have been satisfied. Prior to filing this action, Defendants were served via certified mail with a pre-suit notice letter on Plaintiff's behalf that complied in all respects with U.C.C. §§ 2-313 and 2-607. A copy of this notice has been attached hereto as Exhibit A.

116. Defendants failed to make full restitution by refunding the monies received therefrom.

**COUNT V**
**UNJUST ENRICHMENT**

*Both Classes*

117. Ms. Bauer incorporates, by reference, paragraphs 1 – 78.

118. Defendants have been unjustly enriched by the funds that they have received from Plaintiff and the Classes.

119. Defendants' collection of those funds has conferred a benefit on Defendants.

120. Defendants knew they received a benefit by receiving funds from Plaintiff and the Classes.

121. Defendants' retention of the benefits conferred on them by Plaintiff and the Classes based on illegal means would be unjust.

122. Defendants should be ordered to disgorge or provide restitution to Plaintiff and the Classes.

123. The disgorgement or restitution should include any profits or other benefits enjoyed by Defendants as a result of Defendants' receipt of Plaintiff and the Classes' funds.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, having set forth the claims for relief against Defendants, respectfully requests that this Honorable Court enter Judgment against Defendants as follows:

a. Certification for this matter to proceed as a class action;

b. An award of actual damages as pled herein;

c. Injunctive relief as pled herein;

d. An award of pre-judgment and post-judgment interest as provided by law;

e. An award of attorneys' fees, litigation expenses, and costs of suit;

f. Any other relief as this Honorable Court deems just and proper, given the circumstances.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted on March 11, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
BGeiger@seraphlegal.com
Service@seraphlegal.com
Tel: 813-321-2348
Counsel for Plaintiff

**Exhibits List**
A.   Pre-Suit Notice and Demand for Corrective Action